UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JANE DOE,
    Plaintiff,

v.                                      C. A. No. 16-614-M-LDA

BROWN UNIVERSITY, et al.
    Defendants.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Courts have recognized a private right of action under Title IX to remedy gender discrimination at federally-funded educational institutions ("schools") in cases of discrimination between two students at a school, and between a teacher and a student at a school. By bringing this case against Brown University and two of its administrators, Plaintiff Jane Doe seeks to expand the scope of Title IX protection to include persons experiencing gender discrimination who are not students or staff at the offending school.

The Defendants moved for judgment on the pleadings. ECF No. 16. Because the Court finds that the expansion Ms. Doe advocates is not permitted under Title IX or the cases interpreting its language, the Defendants' Motion for Judgment on the Pleadings is granted.

I.  FACTS[1]

Jane Doe was a freshman at Providence College in 2013. In November of that year, she was at a bar in Providence, Rhode Island with friends when she was drugged, taken by taxi to a Brown University dorm, and sexually assaulted by three Brown University football players. Ms. Doe received treatment several days later at a Massachusetts hospital.

Several months later, in February 2014, Ms. Doe reported the sexual assault to both the City of Providence and Brown University Police. Providence Police issued search warrants for the cell phones and dorm rooms of the Brown University students suspected of assaulting her. The cell phones revealed communications that referenced rape and contained explicit photographs of Ms. Doe taken at the time of the sexual assault. Later laboratory test results of Ms. Doe's hair indicated the presence of two over-the-counter drugs commonly used to incapacitate rape victims.

In the fall of 2014, after Ms. Doe made several requests, Brown University agreed to conduct an inquiry into Ms. Doe's allegations under the student disciplinary code, but not under Title IX standards.[2] In 2016, after Ms. Doe's repeated inquiries with appropriate persons at Brown, Brown informed her that it never completed the

---

[1] The facts are set forth as pled by Jane Doe because, at the motion for judgment on the pleadings stage, the Court "accept[s] as true all well-pleaded facts." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010). The Court has made no determination about the veracity of the facts alleged.

[2] Ms. Doe filed a complaint against Brown University with the Office for Civil Rights at the Department of Education ("OCR") because she believed Brown was required to address her complaint under Title IX standards. That OCR complaint is pending.

2

inquiry concerning her assault and abandoned any disciplinary action against the three Brown students.

Ms. Doe withdrew from Providence College[3] alleging that she was forced to do so because Brown's refusal to discipline her attackers allowed them free range of Providence, causing her to fear for her safety on the Providence College campus and in the general Providence area.

Ms. Doe has now sued Brown University, Jonah Allen Ward, Senior Associate Dean of Student Life, and Yolanda Castillo-Appollonio, Associate Dean of Student Life (collectively "Brown"), alleging that they failed to protect her under Title IX and acted with deliberate indifference by failing to act on or provide redress for her sexual assault. Specifically, Ms. Doe asserts that because Brown failed to respond effectively to her assault she was in fear for her safety on the Providence College campus and in the general Providence area, because "Brown students and/or associates of the men who assaulted her were not prohibited from being near her, or contacting her or her friends." This fear, she alleges, resulted in "a hostile education environment" at Providence College that caused her to suffer "substantial interference with her access to educational opportunities or benefits," and ultimately caused her to withdraw from Providence College.

---

[3] The complaint does not specify a date when she withdrew from Providence College.

3

In addition to her federal statutory claim, Ms. Doe also claims violations of the Rhode Island Civil Rights Act ("RICRA") and Article 1, Section 2 of the Rhode Island Constitution.[4]

All Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

II. STANDARD OF REVIEW

"A motion for judgment on the pleadings [under Rule 12(c)] is treated much like a Rule 12(b)(6) motion to dismiss," with the court viewing "the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quoting *R.G. Fin. Corp. v. Vergara-Núñez*, 446 F.3d 178, 182 (1st Cir. 2006)).

The function of a motion to dismiss is to test the sufficiency of the complaint. *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010). If the Plaintiff is entitled to relief under any set of facts that are plausible and are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," the court must deny the motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[i]f the facts articulated in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)

---

[4] Ms. Doe makes no claim under common law premises liability or any other non-statutory claim.

4

(citing *Twombly*, 550 U.S. at 555). A court must embark on a two-step analysis in considering plausibility. *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017). The court must first set aside conclusory allegations and second, it must consider whether the residual facts support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).

III. DISCUSSION

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *See* 20 U.S.C. § 1681(a). The purpose of this legislation is to ensure that students are free from acts of sexual harassment[5] at a school that have the effect of depriving them equal access to education. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650-51 (1999). Title IX's statutory language expressly provides a single avenue for relief from gender discrimination occurring in educational programs in schools: an expansive administrative enforcement process that hinges federal funding on compliance with a nondiscriminatory mandate. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979)).

---

[5] Sexual harassment is a form of gender discrimination. *Gebser v. Lago Vista Indp. Sch. Dist.*, 524 U.S 274, 281 (1998).

The United States Supreme Court expanded the relief available, however, when it recognized an implied private right of action for damages, holding that an "award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute." *Cannon*, 441 U.S. 677, 705-06 (1979); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992) (monetary damages are available in the implied private action). Therefore, a school and its offending program can both be punished financially under Title IX for violating a student's right to an education without sexual harassment and be subjected to an individual's private suit for money damages under Title IX. It is within this context that the Court examines Ms. Doe's claims against Brown and two of its employees.

*Title IX Claim Against the University*

In order to prove a claim for sexual harassment under Title IX, a plaintiff in this context must demonstrate:

> (1) that he or she was subject to "severe, pervasive, and objectively offensive" sexual harassment by a school peer, and (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits ... (3) [the funding recipient] knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances.

*Porto v. Town of Tewksbury*, 488 F.3d 67, 72-3 (1st Cir. 2007).

The elements a plaintiff must prove assume that Ms. Doe meets the most basic criteria of a Title IX claimant, that she is part of a class of persons entitled to Title IX protection. The developing case law has designated two categories of protected

individuals: students and school employees. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002) (students); *Davis*, 526 U.S. at 650-51 (students); *Cannon*, 441 U.S. at 717 (students); *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 530 (1982) (school employees).

Brown argues that because Ms. Doe was not a Brown University student and did not receive any educational benefits from Brown, she is not entitled to the protections Congress intended to afford in enacting Title IX. Title IX's protections, it asserts, as interpreted by the United States Supreme Court, are limited to student-on-student harassment when both students were enrolled in educational programs at the same school where the harassment occurred.

Ms. Doe counters that Title IX protects against discrimination of any "person" based on gender and, by use of the general term (as opposed to using "student"), Congress intended to protect all persons coming within the school's control, including guests on campus. Brown's Title IX policies, she argues, also demonstrate Brown's intent to cover guests on its campus. Ms. Doe alleges that Brown officials knew of the incident as of February 2014 and could have disciplined the Brown students. Their failure to take any meaningful action led to her having to withdraw from Providence College's educational programs. In other words, she alleges that because she was a college student at the time of the alleged assault (regardless of what school she attended), much like the students in *Frazier*, *Davis*, and *Cannon*, that she is entitled to sue Brown under Title IX.

7

The question that this case presents, therefore, is: can a Providence College student who was sexually assaulted by a Brown student on Brown's campus bring a Title IX damages suit against Brown alleging deprivation of an educational opportunity at Providence College? In order to answer this question – one that appears to be a matter of first impression[6] – the Court turns back to the purpose of the statute and its language – who did Congress intend to protect from discrimination in educational programs based on gender; and who did it intend to punish;, and to whom did the United State Supreme Court intend to give a private right of action?

The language of the statute, supported by legislative history, shows that enforcing Title IX against a school was meant to be program-specific – that is, the financial penalties were applied to the specific program where the violation occurred and not to the school in general. *Bell*, 456 U.S. at 535–38. Senator Birch E. Bayh, Jr. of Indiana, the author of Title IX, noted in the Senate debate, in response to a question for Rhode Island's Senator Claiborne Pell, that the legislation addressed "'three basically different types of discrimination here. We are dealing with discrimination in admission to an institution, *discrimination of available services or studies within an institution once students are admitted*, and discrimination in

---

[6] The majority of the case law the parties cite deal with Title IX cases brought by a student at a school who alleges she was harassed by either a fellow student or a teacher involved in her educational program at the school; in other words, both the harasser and the harassed attend or are affiliated with the same school. In these scenarios, the student alleges that he/she cannot attend classes because of the sexual harassment on the school's campus and thus is deprived of an educational opportunity. Also in these cases, a Title IX claim against the school is viable because the school has control over its students and/or employees and its educational programs. It also has the authority to redress the harassment on its own campus.

8

employment within an institution, as a member of a faculty or whatever.'" *Id.* at 526 (quoting 118 Cong.Rec. 5812 (1972)) (emphasis added). This statement implies that Congress intended Title IX to protect against discrimination of students <u>admitted</u> to the offending school. And, "[a]lthough the statements of one legislator made during debate may not be controlling, Senator Bayh's remarks, as those of the sponsor and author of the language ultimately enacted, are an authoritative guide to the statute's construction." *Bell*, 456 U.S. at 526-527 (internal citation omitted).

Moreover, the case law holds that the protection of Title IX is generally limited to students attending the offending school. The United States Supreme Court's reference back to the school's own students highlights its intention to apply the Title IX private right of action only to students attending the school accused of violating it. *See Davis*, 526 U.S. at 644 ("If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' *its students* to harassment.") (emphasis added); *see also Frazier*, 276 F.3d at 66 (a plaintiff must allege that she was a student).

It appears that the issue of a school's liability under Title IX to a non-student has been adjudicated in only one published opinion that the Court or the parties could find. In *K.T. v. Culver-Stockton College*, No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11. 2016), the district court held that a non-student (a high school student visiting a school as a potential soccer recruit who was assaulted by a school student) could not bring a Title IX damages claim against Culver-Stockton College because she was not within the scope of persons Congress intended Title IX to protect.

9

That court ruled that because a non-student does not suffer from a systemic effect on educational programs or activities at a school she does not attend, she has no right of action against that school under Title IX.[7] *Id.* at *6.

This Court finds the *K.T.* court's rationale and results persuasive. "The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity." *Davis*, 526 U.S. at 653. Ms. Doe was not a student at Brown University and therefore Brown's acts or failures to act could not have prevented her from getting an education at Providence College, where Brown does not have any control or influence over the educational programs in which Ms. Doe was enrolled. The case law specifies that the discrimination must occur in the school's educational programs or activities. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). No one at Brown had "authority to take corrective action to end the discrimination" she alleges prevented her from continuing her classes at Providence College.[8] *Id.* The total absence of a relationship between Ms. Doe's educational institution (Providence

---

[7] The Eighth Circuit Court of Appeal recently upheld *K.T.* on the merits – however, that Court did not address whether Title IX applied to a non-student at the school, but assumed it did in agreeing with the district court's analysis of the plaintiff's failure to state a claim on the merits. *K.T. v. Culver-Stockton College*, 865 F.3d 1054 (8th Cir. 2017).

[8] If she had been a Brown student, however, Brown University would have been on notice of the incident at least by February 2014 and would have been in a position to take action (i.e. transfer of classes, change her living arrangements, remove the offending students from campus etc.) to allow for her continued educational opportunities at Brown.

College) and the harassers' school (Brown University) is dispositive on the issue of whether Ms. Doe has a Title IX claim against Brown in this case. Therefore, the Court finds that Ms. Doe has not alleged that she was denied equal access to education as required for a Title IX claim to exist.

Ms. Doe relies on several cases to support the notion that courts have expanded Title IX coverage to individuals other than students and teachers at the same school. None of them are persuasive on the issue of Title IX liability for non-offending school students. She advocates that the United States Supreme Court in *North Haven Board of Education v. Bell* held that the Title IX definition of "persons" included nonstudents. 456 U.S. at 520-21. *Bell* is not of assistance in the present analysis because Ms. Doe's case presents significantly different facts. First, that case did not involve a private right of action made by an individual for money damages. That case involved the validity of Department of Education regulations promulgated pursuant to Title IX that "prohibit federally-funded education programs from discriminating on the basis of gender with respect to employment." *Id.* at 514. The Court concluded that because Title IX proscribes employment discrimination in schools, employees of those schools are covered "persons." This conclusion does not help Ms. Doe's position that Title IX covers non-students at the offending school because the employees in *Bell* worked for the school accused of discrimination, not a different school.[9]

---

[9] The three additional cases Ms. Doe cites provide no additional support for her argument. In *Simpson v. University of Colorado Boulder*, plaintiffs allege that they were assaulted by both CU football players and non-student recruits. The court found that Title IX applied because the assaults were between students at the same school and arose out of an official school athletic recruiting program over which the

11

Finding that Ms. Doe's status as a non-student, regardless of her allegations that the Court accepts as true, removes her from Title IX's private-cause-of-action umbrella of protection, the Court need go no further in its analysis of that claim. Her federal claim under Title IX fails to state a claim for which relief can be granted and therefore it is dismissed.

*State Law Claims*

Ms. Doe's also asserts two state law claims made under RICRA and Article 1, Section 2 of the Rhode Island Constitution. Now, the Court must determine whether to retain supplemental jurisdiction over those state claims in the absence of any federal claims because it "may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3). "Whether a court should decline

---

University of Colorado failed to exercise its authority and control. 500 F.3d 1170 (10th Cir. 2007). *Crandell v. New York College of Osteopathic Medicine*, a case that Ms. Doe cites for the proposition that Title IX applies to harassment of a student by a person that is not a student or teacher at the school, is also distinguishable. 87 F. Supp. 2d 304 (S.D.N.Y. 2000). In that case, the student experienced harassment during her internship by a resident at the defendant hospital. The court found that the school is on the hook if the harassment occurs to its student even if the educational program is not on campus, but as long as the educational program is required. This decision does not mandate actual control over the harasser – Title IX applies even if the harasser is not a school employee or student, as long as the harassed individual is a student of the school, participating in the school's required educational coursework. This was not so in Ms. Doe's case because she was neither a student at Brown and the sexual assault did not occur in the context of a required educational program. Finally, *Kauhako v. State of Hawaii Board of Education* involved student-on-student (from the same school) sexual assault and the court's denial of partial judgment on the pleadings hinged on the fact that the school had notice of the initial off-campus assault and failed to protect the student who was subsequently raped multiple times by the same student. *Id.*, Civil No. 13-00567 DKW-BMK, 2015 WL 470230 (D. Haw. Feb. 3, 2015). Again, this case is not persuasive because it involved two students who attended the same school.

supplemental jurisdiction depends on a 'pragmatic and case-specific evaluation of a variety of considerations,' including 'the interests of fairness, judicial economy, convenience, and comity.'" *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015) (quoting *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998)).

After reassessing its jurisdiction based on case-specific considerations, the Court declines to keep the two state law claims. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The RICRA claim "raise[s] substantial question of state law that are best resolved in state court." *Camelio*, 137 F.3d at 672. And as to the claim under the Rhode Island Constitution, the First Circuit Court of Appeals in *Desjardins* noted that weighing in on state law issues should be avoided particularly when an interpretation of state constitution is involved. *Desjardins*, 777 F.3d at 46. As such, the Court declines to exercise supplemental jurisdiction over the state law claims. They are dismissed without prejudice.

IV. CONCLUSION

This is a case containing very serious allegations of student conduct on a college campus in Rhode Island. Nevertheless, laws put into place to protect students from sexual discrimination in educational programs were not meant to address all instances of sexual assault occurring in the college environment. This is a difficult conclusion to reach in the face of Ms. Doe's arguments that Brown and other schools may act or continue to act with deliberate indifference to sexual harassment and

13

violence on its campus. However, Title IX is an administrative enforcement statute and contains directives to ensure that schools comply with its mandate against discrimination in education through funding restrictions. According to the complaint, Ms. Doe has filed an OCR complaint that is still pending and, depending on the results, Brown could face penalties. However, legal precedent allowing for a private right of action for damages is limited to certain situations. The Court finds that Ms. Doe's case is not among those scenarios.

Defendants' Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED as to the federal claims, and the remaining state law claims are dismissed without prejudice for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

September 6, 2017